55. Pgs.

APPLICATION FOR WRIT OF HABEAS CORPUS UNDER 28 U.S.C. § 2254 BY A
PERSON IN STATE CUSTODY

| United States District Court | Eastern District of Michigan | |
|---|---|---|
| Name:<br><br>Rufus Gene Lango | Inmate Number:<br><br>498304 | Case Number (official use only) |

Place of Incarceration:

ST. Louis Correctional Facility, 8585 N. Croswell Rd., ST. Louis, MI 48880-9210

Name of Petitioner (Include the name under which you were incarcerated)      Name of
Respondent (authorized person having custody over you)

RUFUS GENE LANGO          vs.          BLAINE LAFLER

The Attorney General of the State of: MICHIGAN

PETITION

1.  Name and location of court which entered the judgement of conviction under attack:

    Wayne County Courthouse, Detroit, Michigan 48226

2.  Date of judgement of conviction:

    July 21, 2004

3   Length of Sentence: **LIFE**, 15 to 40 yrs:

4   Nature of offense involved (all counts):

    . Assault with intent to murder

> Case: 2:06-cv-12228
> Assigned To: Battani, Marianne O
> Referral Judge: Capel, Wallace
> Filed: 05-16-2006 At 07:47 AM
> HC LANGO VS LAFLER (LE)

5.  What was your plea? (check one)

    (a)  Not guilty          [X]
    (b)  Guilty              [ ]
    (c)  Nolo contendere [ ]

    If you entered a guilty plea to one count or indictment, and a  not  guilty  plea
    to another count or indictment, give details: **Not applicable**

6.  If you pleaded not guilty, what kind of trial did you have? (check one)

    (a)    Jury    [X]

    (b)    Judge    [ ]

7    Did you testify at the trial?

    Yes [ ]    No [X]

8    Did you appeal from the judgment of conviction?

    Yes [X]    No [ ]

9.    If you did appeal, answer the following:

    (a)    Name of court: Michigan Court of Appeals

    (b)    Result:    **Denied**

    (c)    Date of result and citation, if known:    November 22, 2005.

    (d)    Grounds raised: **See attachment A**

    (e)    If you sought further review of the decision on appeal by a higher state court, please answer the following:

        (1)    Name of court: Michigan Supreme Court

        (2)    Result: **Denied**

        (3)    Date of result and citation, if known:    **March 27, 2006**

        (4)    Grounds raised: **See attachment B**

    (f)    If you filed a petition for certiorari in the United States Supreme Court, please answer the following with respect to each direct appeal:

        (1)    Name of court: **Not applicable**

        (2)    Result: **Not applicable**

        (3)    Date of result and citation, if known: **Not applicable**

        (4)    Grounds raised: **Not applicable**

10.    Other than a direct appeal from judgment of conviction and sentence, have you previously filed any petitions, applications, or motions with respect to this judgment in any court, state or federal?

    Yes [ ]    No [X]

11. If your answer to 10 was "yes", give the following information:

    (a) (1) Name of court: **Not applicable**

        (2) Nature of proceeding: **Not applicable**

        (3) Grounds raised: **Not applicable**

        (4) Did you receive an evidentiary hearing on your petition, application, or motion?

            Yes [ ]   No [X]

    (b) As to any second petition, application, or motion give the same information:

        (1) Name of court: **Not applicable**

        (2) Nature of proceeding: **Not applicable**

        (3) Grounds raised: **Not applicable**

        (4) Did you receive an evidentiary hearing on your petition, application, or motion?

            Yes [ ]   No [X]

    (c) Did you appeal to the highest state court having jurisdiction the result of action taken on any petition, application or motion?

        (1) First petition, ect    Yes [ ]   No [X]

        (2) Section petition, ect.  Yes [ ]   No [X]

    (d) If you did not appeal from the adverse action on any petition, application, or motion explain briefly why you did not: **Not applicable**

12. State concisely every ground on which you claim that you are being held unlawfully  Summarize briefly the facts supporting each ground. If necessary, you may attach pages stating additional grounds and facts supporting same.

CAUTION: In order to proceed in the federal court, you must ordinarily first exhaust your available state court remedies as to each ground on which you request action by the federal court. If you fail to set forth all grounds in this petition, you may be barred from presenting additional grounds at a later date.

For your information, the following is a list of the most frequently raised grounds for relief in habeas corpus proceedings. Each statement preceded by a letter constitutes a separate ground for possible relief. You may raise any grounds which you may have other than those listed if you have exhausted your state court remedies with respect to them. However, you should raise in this petition all available grounds (relating to this conviction) on which you base your allegations that you are being held in custody unlawfully.

Do not check any of these listed grounds. If you select one or more of these grounds for relief, you must allege facts. The petition will be returned to you if you merely check (a) through (j) or any one of these grounds.

(a) Conviction obtained by plea of guilty which was unlawfully induced or not made voluntarily with understanding of the nature of the charge and the consequences of the plea.

(b) Conviction obtained by the use of coerced confession.

(c) Conviction obtained by use of evidence gained pursuant to an unconstitutional search and seizure.

(d) Conviction obtained by use of evidence obtained pursuant to an unlawful arrest.

(e) Conviction obtained by a violation of the privilege against self-incrimination.

(f) Conviction obtained by the unconstitutional failure of the prosecution to disclose to the defendant evidence favorable to the defendant.

(g) Conviction obtained by a violation of the protection against double jeopardy.

(h) Conviction obtained by action of a grand or petit jury which was unconstitutional selected and impaneled.

(i) Denial of effective assistance of counsel.

(j) Denial of right of appeal.

(A) Ground one: __See Attachment C__

Supporting FACTS (tell your story briefly without citing cases or law: ____

__See Attachment C__

(B) Ground two: __See Attachment C__

Supporting FACTS (tell your story briefly without citing cases or law: ____

__See Attachment C__

(C)   Ground three: **See Attachment C** _____

      Supporting FACTS (tell your story briefly without citing cases or law: _____
      **See Attachment C** _____

(D)   Ground four: **See Attachment C** _____

      Supporting FACTS (tell your story briefly without citing cases or law: _____
      **See Attachment C** _____

(13)  If any of the grounds listed in 12 A, B, C, and D were not previously presented in any other court, state or federal, state briefly what grounds were not so presented, and give your reasons for not presenting them:

    **Not applicable** _____

(14)  Do you have any petition or appeal now pending in any court, either state or federal, as to the judgment under attack?

    Yes [ ]   No [X]

(15)  Give the name and address, if known, of each attorney who represented you in the following states of the judgment attacked herein:

    1   At preliminary hearing: **Susan F. Reed** _____

    2   At arraignment and plea: **Same Above** _____

    3   At trial: **Susan F. Reed (P26897) 18421 Snowden ST.**
       **Detroit, Michigan 48235** _____

    4   At sentencing: _____

    5   On appeal: **Daniel J. Rust**
       **26062 Ivanhoe, Detroit, MI 48239** _____

    6   In any post-conviction proceeding: Not applicable _____

    7   On appeal from any adverse ruling in a post-conviction proceeding: _____
       **Not applicable** _____

16   Were you sentenced on more than one count of an indictment, or on more  than  one
     indictment, in the same court and at approximately the same time?
     Yes  [ ]     No  [x]

17   Do you have any further sentence to serve after you complete the sentence imposed
     by the judgment under attack?
     Yes  [X]     No  [ ]

     1.   If yes, give name and location of court which imposed sentence to be served
          in the future:  __**Detroit, Michigan**__

     2    Give date and length of the above sentence·  ____**Life**____

     3    Have you filed, or do you contemplate filing,  any  petition  attacking  the
          judgment which imposed the sentence to be served in the future?
          Yes  [X]     No  [ ]


Wherefore,  Movant  prays  that  the  Court  grant  him  all  relief  to  which  he  may  be
entitled in this proceeding.


                                         _____
                                              Signature of Attorney (if any)



I declare under penalty of perjury that the foregoing is true and correct   Executed on


__*May 10, 2006*_____
Date


                                    _____
                                              Signature of Movant



                              JUDITH A. RADDATZ
                           NOTARY PUBLIC BAY CO., MI
                       MY COMMISSION EXPIRES Mar 6, 2007

                              *Judith A. Raddatz*
                                *10 May 2006*

## ATTACHMENT A

9. D. Grounds raised in the Michigan Court of Appeals:

DEFENDANT-APPELLANT'S CONVICTIONS SHOULD BE REVERSED BECAUSE THE TRIAL COURT ERRED IN FINDING THE STATEMENTS VOLUNTARY AND ERRED IN THEIR ADMISSION AT TRIAL.

DEFENDANT-APPELLANT IS ENTITLED TO A NEW TRIAL WHERE THE TRIAL COURT GRANTED AN ADJOURNMENT FOR OVER ONE WEEK.

DEFENDANT-APPELLANT'S CONVICTIONS SHOULD BE REVERSED BECAUSE THE JURY WAS NOT PROPERLY INSTRUCTED AS HOW TO CONSIDER THE TESTIMONY OF ANOTHER DEFENDANT.

ATTACHMENT B

9. F- (4). Grounds raise in the Michigan Supreme Court:

DEFENDANT-APPELLANT'S CONVICTIONS SHOULD BE REVERSED BECAUSE THE TRIAL COURT ERRED IN FINDING THE STATEMENTS VOLUNTARY AND ERRED IN THEIR ADMISSION AT TRIAL.

DEFENDANT-APPELLANT IS ENTITLED TO A NEW TRIAL WHERE THE TRIAL COURT GRANTED AND ADJOURNMENT FOR OVER ONE WEEK.

DEFENDANT-APPELLANT'S CONVICTIONS SHOULD BE REVERSED BECAUSE THE JURY WAS NOT PROPERLY INSTRUCTED AS HOW TO CONSIDER THE TESTIMONY OF ANOTHER DEFENDANT.

<u>ATTACHMENT C</u>

12 (A)- Grounds raised in Federal Habeas Petition:

<u>Ground one:</u>

**DEFENDANT-APPELLANT'S CONVICTIONS SHOULD BE REVERSED BECAUSE THE TRIAL COURT ERRED IN FINDING THE STATEMENTS VOLUNTARY AND ERRED IN THEIR ADMISSION AT TRIAL.**

<u>Standard of Review</u>

A reviewing Court examines the entire record and makes an independent determination of whether a defendant's statement is voluntary. The trial court's findings will be reversed unless they are clearly erroneous. **People v Howard**, **(1997)**.

Although a trial court's findings of fact are entitled to deference, **Howard**, **supra**, its application of constitutional standards is not. **People v Truong**, **(1996)**.

Questions of law are given de novo review. **People v Daoud, (2000)**.

An appellate Court reviews decisions regarding the admission of evidence for an abuse of discretion. However, where those decisions involve preliminary questions of law, review is de novo. **People v Knapp, (2001)**; **People v Lukity, (1999)**.

<u>Walker Hearing</u>

When reviewing a trial court's determination of voluntariness, this Court must examine the entire record and make an independent determination. Deference is given to the trial court's assessment of the weight of the evidence and credibility of the witnesses, and trial court's findings will not be reversed unless they are clearly erroneous. **People v Howard, (1997)**.

As noted, review of lower court decisions involving questions of law are reviewed de novo. **Daoud, supra; Truong, supra**.

## Argument

In the instant case, defendant submits the trial court erred in finding the statements made by defendant to be voluntary.

During the hearing, Defendant testified he was arrested at his mother's house without a warrant, was handcuffed and taken to the 10th precinct. He acknowledged he signed the rights form and requested an attorney. He was then led to a cell area where another officer talked to him and he told that officer he wanted a lawyer present.

He was taken to the 13th precinct, where Officer Newman talked to him again. He refused that conversation and indicated an officer was pushing on his head. He believed they were trying to intimidate him and believed they were playing the 'good cop, bad cop' routine. He again requested a lawyer.

Eventually he started talking, because he was stressed out and believed if he did, they were not going to let him go.

In contrast, Off. Newman, who interviewed defendant at a precinct, testified defendant did not request a lawyer, only that he wanted to talk to his mother. He did agree defendant did not want to talk to him. (3/26/04, 11-12, 17).

Off. Gutierrez, who interviewed defendant at police headquarters, also advised him of his rights. The officer testified defendant did not request an attorney. (3/26/04, 31). One statement was taken at 12:45 pm on 12/23/03; a second at 2:20 pm; a third at 4:45 pm. While there were no significant breaks, he was advised of his rights only once, used the restroom twice, was provided with minimal nourishment. At no time did he request an attorney. (3/26/04, 44).

Off. Parra assisted in transporting defendant from the precinct to police headquarters, and denied touching defendant.

He had been arrested at approximately 7:00 am the previous day. He had been transported to one precinct, then to headquarters the next day.

Once an accused invokes his Fifth Amendment right to an attorney, the police must discontinue interrogation. It cannot be resumed without counsel present unless the accused initiates further communication with the police. He must be sufficiently aware of his rights to make a voluntary, knowing, and intelligent waiver of those rights. **Minnick v Mississippi, (1990); Edwards v Arizona, (1981); People v Slocum, (1996); People v McElhaney, (1996).**

Here, defendant had invoked his right to an attorney several times. He did not initiate a conversation with the officers. One officer agreed defendant did not want to talk and ended the interview. After being transported to headquarters, he was again advised of his rights, and after advising him of his rights, proceeded to interrogate him for at least four hours.

Whether a waiver of **Miranda** rights was voluntary is analyzed under a totality of the circumstances test, examining the police conduct to determine whether the statements were the product of a free and unconstrained choice. **People v Abraham, (1999); Howard, supra.**

Reviewing the totality of the circumstances, assessing the credibility of the witnesses, with deference given to the trial court, defendant submits the trial court erred in finding the statements or voluntary.

They were the result of extreme pressure on defendant  He was concerned about his mother's house; he had been in custody for at least two days; he had requested an attorney several times, but was ignored; after intense interrogation spanning at many hours, during which time he was minimally fed, he broke down. He gave in and talked to the officers, believing he would be released.

As such, reversal is required.

## MRE 404(b)

Here, in connection with another case, the court determined the evidence of

prior bad acts showed a scheme and was not more prejudicial than probative. (MH, 04/04/04, 8-9).

In the instant case, defendant submits the trial court abused its discretion in admission of several statements made by him, which were irrelevant to the issue at hand: whether he had committed the within offenses.

The statements of defendant, implicating him in other offenses, were redacted and read before the jury.

As noted, evidentiary errors are reviewed for an abuse of discretion. **Knapp, supra**; **Lukity, supra,**; People v Crawford, (1998).

While the rule is one of inclusion, **People v Pesquera**, (2001), here, admission of the bad acts resulted in a miscarriage of justice. **Lukity, supra** at 495.

In order to admit evidence of prior bad acts, pursuant to MRE 404(b)[2], the court must determine that the evidence is offered for a proper purpose under MRE 404(b), that it be relevant under MRE 402 as enforced through MRE 104(b), that the probative value of the evidence is not substantially outweighed by unfair prejudice, and the trial court may, upon request, provide a limiting instruction to the jury. **People v Vander Vliet**, (1993), amended (1994).

Here, the prosecution sought to introduce the evidence of prior bad acts to show a common plan or scheme: that defendant went on a robbing spree.

---

[2] MRE 404(b) states: (1) Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, scheme, plan, or system in doing an act, knowledge, identity, or absence of mistake or accident when the same is material, whether such other crimes, wrongs, or acts are contemporaneous with, or prior or subsequent to the conduct at issue in this case.

While defendant recognizes it may have been admitted for a proper purpose, he submits the court failed to determine its relevancy, and erred in finding their probative value was not substantially outweighed by unfair prejudice.

Here, the only similarities between the offenses contained in the statements were that they were robberies. There was no logical relevance between the admitted **bad** acts and to the charged offense.

If defendant Stanley's testimony were to be believed, it was a spur of the moment occurrence, while he was being taken back to his house. The situation was completely different from what defendant Stanley had testified to concerning the drugstore robbery/carjacking. He had not been involved in the other homicide/robbery.

The evidence against defendant was not overwhelming. Without the statements of defendant, it consisted of the testimony of one witness, Mr. Pannah and the questionable testimony of defendant Stanley, who claimed involvement in the offenses under duress. Mr. Barmon was unable to identify anyone, and his description of the driver did not match defendant.

Thus there was no demonstration of a concurrence of common features between the charged and uncharged acts such that the charged acts were naturally to be explained as being caused by a general plan of which the events were individual manifestations. **See People v Sabin, (After Remand), (2000).**

While the jury was given the cautionary instruction (06/30/04, 134), and jurors are presumed to follow the instructions, **People v Graves, (1998),** that did nothing to dispel the substantial effect of the bad acts contained in the statements.

If the jury had not been aware of these bad acts, i.e., if the statements had been excluded, the prosecutor would not have been able to reference them in her closing arguments (6/30/04, 67), and it was more probable than not that there

would have been a different result. **Lukity, supra.** The jury would have heard defendant's involvement rested upon only one eyewitness, and the questionable testimony of defendant Stanley.

As such, the trial court erred in admission of the statements of defendant containing prior bad acts, in that they were substantially more prejudicial than probative of the issue at hand, whether defendant committed the charged offenses, requiring reversal.

The admission of this evidence denied Defendant a fair trial. As a general rule, evidence tending to show the commission of other criminal offenses or acts by a defendant evidencing bad character is inadmissible to prove guilt of the charged offense. The recognized danger is that the jury will be diverted from an objective appraisal of the accused's guilt, and convict because they perceive the accused to be bad or dangerous. **Old Chief v United States, (1997); People v Crawford, supra; People v Mitchell, (1997).** The prohibition "reflects and gives meaning to the central precept of our system of criminal justice, the presumption of innocence.

Michigan courts have repeatedly reversed where such evidence has created the danger of a conviction based upon a defendant's statements or commit crimes rather than upon the evidence of his conduct in the case at issue.

The bar against using evidence of other crimes, wrongs, or acts, or statements of an individual to prove a propensity to commit such acts is corporated into MRE 404 (b)(1), which also describes the legitimate uses for such evidence:

## Ground two

DEFENDANT-APPELLANT IS ENTITLED TO A NEW TRIAL WHERE THE TRIAL COURT GRANTED AN ADJOURNMENT FOR OVER ONE WEEK.

## Standard of Review

Requests for adjournment are addressed to the trial court's discretion and the decision will not be overturned absent an abuse of discretion. **People v Bettistea**, (1988); People v Williams, (1972).

Adjournments or continuances are not to be granted except for good cause shown. **People v Sekoian**, (1988).

In reviewing this question, this Court must consider whether defendant is asserting a constitutional right, whether there is a legitimate reason for asserting the right, whether defendant is guilty of negligence, whether adjournments were at defendant's behest, and whether prejudice to defendant will result. **People v Wilson**, (1976); **People v Bell**, (1986).

On appeal, reversal is mandated only upon a finding of an abuse of discretion which resulted in prejudice to the accused. Wilson, supra; **People v Gross**, (1982); MCL 769.26.

An abuse of discretion is found where an unprejudiced person, considering the facts on which the trial court acted, would say there was no justification or excuse for the ruling made, People v Snider, (2000), or the result is so palpably and grossly violative of fact and logic that it evidences a perversity of will, a defiance of judgment, or the exercise of passion or bias. **People v Hine**, (2002).

## Argument

In the instant case, defendant submits the trial court abused its discretion in adjourning the trial for over one week at the request of the prosecutor, where there was no valid reason for the court not to continue the proceedings

against defendant.

Apparently, the reason for the adjournment was due to an illness of defendant Stanley. (06/29/04, 128). However, it was unclear at the time of the adjournment whether he would be testifying to if he was going to testify.

Application of the standards relative to the continuance demonstrates the court abused its discretion in granting the request.

Defendant was not asserting his constitutional right, nor was it at his behest. The request was made by the prosecution.

The question of whether there was a legitimate reason for the request did not appear to be sound. While the prosecution did not want to call her witnesses twice, there was no reason to go forward with defendant's case, in that he had a separate jury than defendant Stanley. There were witnesses who were ready to testify, besides defendant Stanley. Once trial resumed, the prosecution called police officers Jackson and Staples to testify.

There was no negligence on defendant's part. On the contrary, he objected to the continuance, noting the prejudicial effect the continuance would have on his jury: defendant was ready to proceed with the trial, which had been entering its third week. Numerous witnesses had already testified and it was more probable than not that with the adjournment, that testimony would be significantly minimized, in that the court prohibited the jury from note-taking. The jury would focus more upon the testimony of the witnesses presented after trial had resumed, including defendant Stanley, as opposed to considering the testimony of all the witnesses in making its decision as to defendant's guilt.

It was clear that this adjournment was not for good cause, nor granted with a view towards speedy and substantial justice. See MCR 2.503; MCL 768.2. On the contrary, even the court was confused as to why it was required to grant the

adjournment, requesting from the prosecutor information as to why he the court had no choice but to grant the adjournment. (06/17/04, 7).

Defendant therefore submits the court abused its discretion in granting the extensive adjournment.

## Ground three

> DEFENDANT-APPELLANT'S CONVICTIONS SHOULD BE REVERSED BECAUSE THE
> JURY WAS NOT PROPERLY INSTRUCTED AS HOW TO CONSIDER THE TESTIMONY OF
> ANOTHER DEFENDANT.

## Standard of Review

Where there are questions involving the jury instructions, review is de novo. **People v Perez, (2003); People v Marion, (2002).**

A trial court is required to give requested instructions only if the instructions are supported by the evidence or the facts of the case. **People v Ho, (1998).**

If an applicable instruction was not given, the defendant must show that the court's failure to give the requested instruction resulted in a miscarriage of justice. **People v Riddle, (2002).**

The instructions are to be read as whole rather than extracted piecemeal to establish error, and even if somewhat imperfect, there is no error if the instructions fairly presented the issues to be tried and sufficiently protected the defendant's rights. They must include all elements of the crime charged and must not exclude consideration of material issues, defenses and theories for which there is evidence in support. **People v Rodriguez, (2000); People v Daniel, (1994).**

Where a requested instruction is not given, the defendant bears the burden of establishing that this constituted a miscarriage of justice. MCL 769.26; **Riddle, supra; Rodriguez, supra; Lukity, supra.**

## Argument

Here, defendant submits the trial court erred in denying the defense request to instruct his jury as to how consider the testimony of defendant Stanley.

This issue was preserved for review, as defense had requested the jury

instruction, as it related to an accomplice.

The court denied the request, noting the instruction on witness credibility, CJI2d 3.6, was adequate, because of defendant Stanley's position. (6/30/04, 44-45).

Defendant's jury had heard testimony from defendant Stanley, who claimed he was involved not only in the charged offense, but at least one other armed robbery involving defendant. He advanced the theory he was involved not by choice, but his involvement was under duress. Thus he admitted his involvement, albeit for a different reason.

Defendant submits the jury should have been instructed at the very least, to consider his testimony as a disputed accomplice, CJI2d 5.5, Witness a Disputed Accomplice and been cautioned in accordance with CJI2d 5.6, Cautionary Instruction Regarding Accomplice Testimony.

As applied to this case, the instructions would have read as follows:

> (1) Before you may consider what Mr. Stanley said in court, you must decide whether he took part in the crime the defendant is charged with committing. Mr. Stanley has not admitted taking part in the crime, but there is evidence that could lead you to think that he did.
> (2) A person who knowingly and willingly helps or cooperates with someone else in committing a crime is called an accomplice.
> (3) When you think about Mr. Stanley's testimony, first decide if he was an accomplice. If, after thinking about all the evidence, you decide that he did not take part in this crime, judge his testimony as you judge that of any other witness. But, if you decide that Mr. Stanley was an accomplice, then you must consider his testimony in the following way: (CJI2d 5.5)

> (1) You should examine an accomplice's testimony closely and be very careful about accepting it.
> (2) You may think about whether the accomplice's testimony is supported by other evidence, because then it may be more reliable. However, there is nothing wrong with using an accomplice as a witness. You may convict the defendant based only on an accomplice's testimony if you believe the testimony and it proves the defendant's guilt beyond a reasonable doubt.
> (3) When you decide whether you believe an accomplice, consider the following:

> (a) Was the accomplice's testimony falsely slanted to make the

defendant seem guilty because of the accomplice's own interests, biases, or for some other reason?

(b) Has the accomplice been offered a reward or been promised anything that might lead him to give false testimony?

(c) Has the accomplice been promised that he will not be prosecuted, or promised a lighter sentence or allowed to plead guilty to a less serious charge? If so, could this have influenced his testimony?

(4) In general, you should consider an accomplice's testimony more cautiously than you would that of an ordinary witness. You should be sure you have examined it closely before you base a conviction on it. (CJI2d 5.6)

If the jury had thus been instructed, they would have been warned to consider defendant Stanley's testimony more cautiously than that of an ordinary witness and would have provided guidelines to follow when assessing his credibility.

An accomplice has been defined as a person who knowingly and willingly helps or cooperates with someone else in committing a crime. **People v Allen,** (1993).

Defendant Stanley admitted to his participation in the offenses, admitted he had been released several times from custody, admitted he had not been charged with the instant offense, and admitted he had been charged in the drugstore carjacking and robbery. Defendant's jury could have concluded he was an accomplice, that he aided and abetted defendant in the commission of not only that offense, but the charged offense, and was testifying in such a manner that his own jury would agree he acted under duress. As a result, he offered for defendant's jury additional consideration of other bad acts: he was forced to participate at gunpoint and afterwards threatened not to speak to the authorities.

The other witnesses, if believed, had testified he was involved with this offense and his actions did not indicate he was operating under duress. Whether he was or not was left to his own jury.

The jury instruction as to witness credibility, CJI2d 3.6, was inadequate with respect to defendant Stanley, because of his unique position as both a

witness and a defendant in the trials. Yet the jury was instructed to consider his testimony as if he were any other ordinary witness. If they had been properly instructed, the jury would have been better able to assess not only his credibility, but it would have impacted on the other witness' testimony, casting doubt upon their testimony as well.

Defendant submits the failure of the court to properly instruct the jury resulted in a failure to protect defendant's rights by failing to have them determine for themselves defendant's Stanley's role, where there was evidence to support his participation. As such, defendant suffered a miscarriage of justice. Lukity, supra.

Therefore, defendant submits the trial court abused its discretion in denying defendant's request for the instruction, requiring reversal.

STATE OF MICHIGAN

IN THE COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN
      PLAINTIFF-APPELLEE,

-vs-

RUFUS GENE LANGO
      DEFENDANT-APPELLANT.
_____/

WAYNE COUNTY CIRCUIT COURT NO: 04-01652-02
_____/

KYM L. WORTHY
WAYNE COUNTY PROSECUTING ATTORNEY
ATTORNEY FOR PLAINTIFF-APPELLEE
_____/

DANIEL J. RUST (P32856)
ATTORNEY FOR DEFENDANT-APPELLANT
_____/

COURT OF APPEALS NO:
257150

**APPELLANT'S BRIEF ON APPEAL**

**\*\* ORAL ARGUMENT REQUESTED \*\***

DANIEL J. RUST
26062 IVANHOE
REDFORD, MICHIGAN  48239
(313) 837-7734

## TABLE OF CONTENTS

                                                                        **PAGE**

INDEX OF AUTHORITIES ...............................................................  iii-v

STATEMENT OF JURISDICTION ...................................................  vi

STATEMENT OF QUESTIONS PRESENTED ..............................  1

STATEMENT OF FACTS ...............................................................  2-12

ARGUMENT:


    **I.**      **DEFENDANT-APPELLANT'S CONVICTIONS
SHOULD BE REVERSED BECAUSE THE TRIAL
COURT ERRED IN FINDING THE STATEMENTS
VOLUNTARY AND ERRED IN THEIR ADMISSION
AT TRIAL** ...........................................................................  13-18


    **II.**     **DEFENDANT-APPELLANT IS ENTITLED TO A
NEW TRIAL WHERE THE TRIAL COURT
GRANTED AN ADJOURNMENT FOR OVER
ONE WEEK** ..........................................................................  19-21


    **III.**    **DEFENDANT-APPELLANT'S CONVICTIONS
SHOULD BE REVERSED BECAUSE THE JURY
WAS NOT PROPERLY INSTRUCTED AS HOW
TO CONSIDER THE TESTIMONY OF ANOTHER
DEFENDANT** ......................................................................  22-25


SUMMARY AND RELIEF SOUGHT .........................................  26

## INDEX OF AUTHORITIES

PAGE

**Cases**

Edwards v. Arizona
    451 US 477; 101 SCt 1880; 68 LEd2d 378 (1981)...................................................... 15

Minnick v. Mississippi
    498 US 146; 111 SCt 486; 112 LEd2d 489 (1990)..................................................... 15

People v. Abraham
    234 Mich App 640; 599 NW2d 736 (1999)............................................................ 15

People v. Allen
    201 Mich App 98; 505 NW2d 869 (1993).............................................................. 24

People v. Bell
    155 Mich App 408; 399 NW2d 542 (1986)............................................................ 19

People v. Bettistea
    173 Mich App 106; 434 NW2d 138 (1988)............................................................ 19

People v. Crawford
    458 Mich. 376; 582 NW2d 785 (1998).................................................................. 16

People v. Daniel
    207 Mich App 47; 523 NW2d 830 (1994).............................................................. 22

People v. Daoud
    462 Mich 621; 614 NW2d 152 (2000)............................................................. 13,14

People v. Graves
    458 Mich 476; 581 NW2d 229 (1998).................................................................. 18

People v. Gross
    118 Mich App 161; 324 NW2d 557 (1982)............................................................ 19

People v. Hine
    467 Mich 242; 650 NW2d 659 (2002).................................................................. 19

People v. Ho
    231 Mich App 178; 585 NW2d 357 (1998)............................................................ 22

People v. Howard
    226 Mich App 528; 575 NW2d 16 (1997)................................................ 14,15

People v. Knapp
    244 Mich App 361; 624 NW2d 227 (2001)................................................ 13

People v. Lukity
    460 Mich 484; 596 NW2d 607 (1999)........................................ 13,16,18,22,25

People v. Marion
    250 Mich App 446; 647 NW2d 521 (2002)................................................ 22

People v. McElhaney
    215 Mich App 269; 545 NW2d 18 (1996)................................................ 15

People v. Perez
    469 Mich 415; 670 NW2d 655 (2003)................................................ 22

People v. Pesquera
    244 Mich App 305; 625 NW2d 407 (2001)................................................ 16

People v. Rodriguez
    463 Mich 466; 620 NW2d 13 (2000)................................................ 22

People v. Sabin (After Remand)
    463 Mich 43; 614 NW2d 888 (2000)................................................ 18

People v. Sekoian
    169 Mich App 609; 426 NW2d 412 (1988), lv den 431 Mich 869 (1988).................. 19

People v. Slocum (On Remand)
    219 Mich App 695; 558 NW2d 4 (1996)................................................ 15

People v. Snider
    239 Mich App 393; 608 NW2d 502 (2000)................................................ 19

People v. Truong (After Remand)
    218 Mich App 325; 553 NW2d 692 (1996)................................................ 13,14

People v. VanderVliet
    444 Mich 52; 508 NW2d 114 (1993), amended 445 Mich 1205 (1994)..................... 17

People v. Williams
    386 Mich 565; 194 NW2d 337 (1972)................................................ 19

People v. Wilson
    397 Mich 76; 243 NW2d 248 (1976), reh den 397 Mich 962 (1976)........................ 19

**Statutes**

MCL 768.2 ........................................................................................................................... 21

MCL 769.26 ......................................................................................................................... 22

MCL 769.26 ......................................................................................................................... 19

## Michigan Rules of Evidence

MRE 104(b) .......................................................................................................................... 17

MRE 402 .............................................................................................................................. 17

MRE 404(b) .......................................................................................................................... 16

## Michigan Jury Instructions

CJI2d 3.6 .............................................................................................................................. 23

CJI2d 5.5 .............................................................................................................................. 23

CJI2d 5.6 .............................................................................................................................. 23

## Michigan Court Rules

MCR 2.503 ............................................................................................................................ 21

## STATEMENT OF JURISDICTION

Defendant submits the Michigan Court of Appeals basis for jurisdiction resides in MCR 7.203(A), involving an Appeal of Right because Defendant-Appellant was convicted at trial on July 1, 2004, sentenced on July 21, 2004, and timely filed a Claim of Appeal and requested appointment of appellate counsel.

Said Claim of Appeal and request for appellate counsel was filed on August 3, 2004, with the trial court, prepared and filed with the Court of Appeals on August 5, 2004, Wayne County Circuit Court No: 04-01652-02.

## STATEMENT OF QUESTIONS PRESENTED

I.  **SHOULD DEFENDANT-APPELLANT'S CONVICTIONS BE REVERSED BECAUSE THE TRIAL COURT ERRED IN FINDING THE STATEMENTS VOLUNTARY AND DID THE COURT ERR IN THEIR ADMISSION AT TRIAL?**

        Trial Court Did Not Answer

        Defendant-Appellant Answers: Yes

II.  **IS DEFENDANT-APPELLANT ENTITLED TO A NEW TRIAL WHERE THE TRIAL COURT GRANTED AN ADJOURNMENT FOR OVER ONE WEEK?**

        Trial Court Did Not Answer

        Defendant-Appellant Answers: Yes

III.  **SHOULD DEFENDANT-APPELLANT'S CONVICTIONS BE REVERSED BECAUSE THE JURY WAS NOT PROPERLY INSTRUCTED AS HOW TO CONSIDER THE TESTIMONY OF ANOTHER DEFENDANT?**

        Trial Court Did Not Answer

        Defendant-Appellant Answers: Yes

## STATEMENT OF FACTS

On June 7, 2004, before the Honorable Edward Ewell, Wayne County Circuit Court Judge, a jury trial was begun in the matter of **People of the State of Michigan v. Rufus Lango**, Wayne County Circuit Court No: 04-1652-02.  Before the same jury a companion case, **People of the State of Michigan v. Gregory Washington**, Wayne County Circuit Court No: 04-1652-01, was heard.

At the same time, before a separate jury, another case was heard, **People of the State of Michigan v. Jessie Stanley**, Wayne County Circuit Court No: 04-3764.

Defendants were charged in the Information with felony murder, assault with intent to murder, and two counts of felony firearm.  MCL 750.316; MCL 750.83; MCL 750.227b.

It was alleged that on or about August 30, 2003, at a location in the City of Detroit, County of Wayne, State of Michigan, defendant did, while armed with a firearm, in the commission of an armed robbery, kill Martin Ngaima, and did assault Alexander Barmon with the intent to kill him.

The people were represented by Ms. Kam Towns, assistant county prosecutor; defendant Lango by Ms. Susan Reed; defendant Washington by William Winters; defendant Stanley by Randall Upshaw.

The following witnesses testified: Edwin Bannah, Alexander Barmon, Detroit Police Officer Knox, Mr. Anderson, Detroit Police Officer Thomas Smith, Detroit Police Officer Allen, Detroit Police Officer Brown, Detroit Police Officer Manuel Gutierrez, Detroit Police Sgt. Nicholas Giaquinto, Shanetta Smith, Detroit Police Officer Michelle Melendez, Samuel Ngiama, Detroit Police Officer Lance Newman, Doctor Leigh Hlavaty, Dearborn Police Officer Stanley

Kulikowski (before defendant Stanley's jury only), Detroit Police Officer Anthony Jackson, Detroit Police Officer Kurtiss Staples, Leslie McDonald (before defendant Stanley's jury only), and defendant Stanley.

Numerous exhibits were admitted.

Prior to trial, a <u>Walker</u>[1] Hearing was conducted. After hearing testimony from Officer Newman (3/26/04, 5-20), Officer Gutierrez (3/26/04, 43-53), defendant (3/26/04, 53-77), Officer Parra (3/26/04, 78-85), and argument (3/26/04, 85-88), the court denied the motion to suppress defendant's statements. (3/26/04, 88-90).

Prior to trial, relative to another case, the court determined defendant's statements which included evidence of prior bad acts, were admissible. (See People v. Rufus Lango & Jerome Smith, Wayne County Circuit Court No: 04-1155-01 & -02, Motion Hearings of March 26, 2004 and April 2, 2004, Attached).

Defendant's statements were to be redacted to exclude references to defendant Washington. The court denied a motion for separate trials. (6/02/04).

Preliminary matters were dealt with (6/07/04, 5-11) and a jury was selected. (6/07/04, 11-228).

The court conducted a <u>Wade</u> Hearing[2]. After hearing testimony from Sgt. Giaquinto (6/07/04, 8-41), Mr. Bannah (6/07/04, 41-75) and hearing argument (6/07/04, 75-80), the court found the photographic lineup of defendant was not unduly suggestive. (6/07/04, 81-82).

Defendant Stanley's jury was selected.

Defendant's jury was preliminarily instructed. (6/9/04, 83-93).

---

[1] <u>People v. Walker</u> (On Rehearing) 374 Mich 331; 132 NW2d 87 (1965).
[2] <u>United States v. Wade</u> 388 U.S. 218; 87 S Ct 1926; 18 L.Ed.2d 1149 (1967).

3

Opening arguments were made by all parties before their respective juries: prosecutor (6/9/04, 93-106); defendant Stanley (6/9/04, 104-116), defendant Washington (6/9/04, 116-122), and defendant Lango. (6/9/04, 123-127).

Mr. Bannah testified he lived in Liberia during times of civil unrest, and was thus familiar with assault weapons. In 1994 he moved to the United States, where he maintained contact with deceased, and met Mr. Barmon when he came to Detroit to attend a friend's house warming party.

On the day in question, he was helping to prepare for the party and drinking some beers. He stopped drinking at noon, instead drinking water. Around 11:00pm, deceased, Mr. Barmon and himself decided to leave the party and drive around. Deceased was driving and he was in the back seat. As they were returning to the party, they saw some women heading to a bar and decided to check it out. All three got out, and as they were walking single file towards the bar, another car made a sudden stop right in front of them. He believed it was a red convertible with a white top. He saw the driver, defendant Lango, pointing a weapon at them and told them not to move. Another person got out of the passenger side and also pointed a weapon at them and also told them not to move. He identified defendant Stanley as that second person. He believed defendant Stanley was wearing a colorful mask over part of this face. Based on his previous experience in Liberia, he began to form a plan of action. He started to talk to them.

As he turned to look at the driver's face, he heard a shot. He saw another person, defendant Washington, coming from the rear of the car, also with a weapon in his hand. He heard the gunshot at the same time as he saw defendant Washington. He did not know which person shot. After he heard the shot he took off running. Deceased was wearing several items of jewelry, including a gold chain with a medallion, as well as a gold bracelet, watch, and a wedding ring. After he ran he heard other shots. He heard Mr. Barmon say he was hit. He

4

returned to him and called 911. He remained with him when the ambulance arrived. Mr. Barmon was placed in the ambulance and went to where deceased was lying on the ground. He did not see the chain or the bracelet at that time. He was interviewed by the police when they arrived, giving them descriptions of two people. He admitted he was in a state of confusion at the time. He identified a statement he gave to the police. He went to the hospital where he later learned deceased had died. He returned to Minneapolis, Minnesota, where he was living.

As he was driving back to Minnesota, he replayed what had occurred in his mind. He recalled the third person. The only time he saw Mr. Barmon was at deceased's funeral. They did not talk about what had occurred. A few months later, at a local precinct in Minneapolis, he viewed three separate photographic lineups, identifying all three defendants, identifying defendant as driver. He testified at defendants' preliminary examination, identifying defendants Washington and Lango. At another preliminary examination, he identified defendant Stanley. (6/10/04, 7-56, 66-97).

Outside the presence of the jury, the court agreed the jury would not be permitted to take notes and so instructed the jury. The court also dealt with possible improper cross-examination of the witness by defendant Stanley. (6/10/04, 57-66).

On cross-examination, he admitted he had reviewed his prior testimony as well as what he told the police. He agreed he did not tell them that there were three persons that evening, or that one was wearing a mask. He was only able to give a description of the third person's face. He admitted he had been traumatized by the events when he gave the descriptions to the police, and was unable to recall exactly what he told them. He described the chain and a bracelet that deceased had been wearing that night. He agreed defendant was the darkest in the photographic lineup. (6/10/04, 97-197; 6/14/04, 5-17).

Mr. Barmon was also from Liberia. He had been exposed to the civil unrest there, having seen it on a daily basis and had been exposed to numerous checkpoints. In 1994, he moved to the United States. He came to Detroit to visit a friend.

On the day in question, he had been drinking beer during the day. He, deceased, and Mr. Bannah decided to leave the party to go for a ride. As they were returning, deceased decided to follow some females who were walking to a bar. They parked and as all three got out and were walking towards the bar, a red sports car pulled right in front of them cutting them off. He saw a shotgun in the driver's hand, pointing at them. He was told not to move. Deceased was closer to the vehicle, approximately 6-7 feet away. He saw another person also armed with a weapon coming from the other side of the vehicle. That person also told them not to move. Deceased took step towards the person holding the weapon. He saw him get shot in the stomach. He started running, and heard a lot of other shots. He stopped running after he got shot four times in his shoulder. After 911 was called, EMS arrived on the scene, and he was treated and taken to the hospital. He described what deceased was wearing, which included a gold chain with a lion's head, a gold bracelet, and a gold watch. When they were in the ambulance, he did not see those items on deceased. He showed his injuries to the jury.

He was interviewed by the police approximately 3-4 days after the incident, but gave only one description, the shooter. After he was released from the hospital, he returned to Minnesota where he was living. A few months later, he attended three photographic lineups, but was unable to identify anyone. (6/14/04, 17-56, 124).

On cross-examination, he could not recall how many officers he talked to. He admitted he had been drinking, admitted he did not see the driver get out of the car and told the officer the passenger shot and killed deceased. He also thought he was going to be killed. He testified at defendant's preliminary examination. (6/14/04, 61-124).

Officer Knox interviewed Mr. Bannah at the scene for approximately 15-30 minutes, who gave him descriptions of two persons. Mr. Bannah appeared to be scared and was crying. He identified various photographs of the scene. He preserved the scene and prepared a report. Although Mr. Bannah told him there were three possible suspects, he admitted he wrote only two in his report. (6/14/04, 124-154).

Mr. Anderson, EMS emergency technician, responded to the scene. One person who appeared wounded as a result of a gunshot wound was taken to the hospital, as was deceased. Jewelry taken from deceased did not include a gold chain with a medallion or a gold bracelet. The only piece of jewelry he recalled was a watch. (06/15/04, 4-19).

Officer Smith, evidence technician, responded to the scene. He identified various photographs taken of the scene, that he and his partner prepared a diagram, and that the photographs were taken with a flash. He recovered several shell casings, including two from an assault rifle. He noted their location, which were approximately 8-10 feet from where blood had been found. The bodies had been removed from the scene prior to his arrival. The shell casings were not checked for fingerprints. A baseball cap was also found at the scene. (06/15/04, 19-50)

Officer Allen, firearms examiner, determined they were fired from the same weapon. (06/15/04, 50-66).

Outside the presence of the jury, the defense requested assistance from the prosecutor in securing possible eyewitnesses. The court also dealt with issues concerning Miss Smith's testimony as well as defendant Washington's possible criminal involvement in other offenses, as well as redacting defendant's statement. (06/15/04, 82-98).

Officer Brown was the first responding officer to the scene. EMS was present and the individuals were already inside the vehicle. She maintained crowd control. Other officers who arrived preserved the same. She accompanied EMS to the hospital and secured the clothing of

7

deceased, who she learned the next day, had died. Personal jewelry was also secured, which did not include a necklace, bracelet, or gold medallion. (06/15/04, 69-79).

Officer Gutierrez interviewed defendant, known to him 'Bushy', on December 23, 2003, after he had been advised of his Miranda rights. The statement, which defendant signed, was read into the record. There was another officer present. (06/15/04, 126-130). A second statement was also read to the jury. Both did not indicate any involvement in the homicide. (06/15/04, 103-140).

Sgt. Giaquinto conducted the photographic lineup of defendant, who was not in custody at the time. (06/15/04, 140-169).

Ms. Smith, fiancée of defendant Washington, was present when he was arrested. She knew defendant, as well as Mr. Stanley. She had arrived at her house when the police were there. She admitted to previous convictions for theft. She denied telling the police that she knew why they were there. She had also been arrested at that time and taken to the precinct, then to the hospital. She admitted she signed a statement at least three times, but denied knowing what it contained because she had been upset and crying during her interview. She denied saying anything to the police, could not recall signing any other piece of paper. She denied telling the officer defendant Washington had any weapons or that there were guns in the house. She admitted she had been arrested because of outstanding warrants. (6/16/04, 4-43).

Officer Melendez assisted in the arrest of defendant Washington. She was assisted by other officers. She had talked to Ms. Smith at the house for approximately 30 minutes. She accompanied Ms. Smith to the precinct and then to the hospital. She confirmed there were outstanding warrants for Ms. Smith's arrest. The warrant for defendant Washington was obtained later the same day. She recalled that an officer was present with a video camera, but could not recall whether or not it had been videotaped. (6/16/04, 43-46, 54-81).

8

Outside the presence of the jury, the parties agreed to limit Officer Melendez' testimony. (6/16/04, 46-54)

Mr. Samuel Ngiama, father of deceased, identified him. He was aware his son had a gold bracelet as well as gold African jewelry. However, the only item he received was his wedding band. (6/16/04, 82-89)

Officer Newman, officer in charge, took three photographic lineup sheets to Minnesota to be viewed by Mr. Barmon and Mr. Bannah, accompanied by Officer Staples. He also interviewed both defendants. Defendant was immediately identified by Mr. Bannah, who also identified the other two defendants. Mr. Barmon was unable to identify anyone. He returned the wedding ring of deceased to the family. He did not know who prepared the photographic lineup of defendant Stanley. He attempted to have a conversation with Mr. Barmon at the hospital on at least two occasions. He admitted Mr. Barmon informed him of only two perpetrators. (6/16/04, 89-136).

He testified before the Stanley jury separately (6/16/04, 150-163), as did Dearborn Police Officer Stanley Kulikowski (6/16/04, 163-169).

Dr. Hlavaty, forensic pathologist, determined the cause of death to be from multiple gunshot wounds. A bullet was recovered from the abdomen. However, he admitted it was possible that deceased had been shot only once. There was no evidence of close range firing; there was evidence of alcohol in his system. The recovered bullet was turned over to the police department. (6/16/04, 136-148).

Over defense objections, the court adjourned the trial, due to defendant Stanley's illness as indicated by the prosecutor. It requested the prosecutor inform the court why it had no choice in the matter. The trial resumed 11 days later. (6/17/04).

The court denied a defense request to question Officer Newman concerning other investigations. The parties agreed to a stipulation as to the videotape of the arrest of defendant Washington was irrelevant, later entered. (6/28/04, 118). The court, with the concurrence of the parties, dismissed a missing juror. (6/28/04, 3-17, 117).

Officer Jackson took a statement from Ms. Smith, after advising her of her rights. She was in custody at the time of the statement, and he was aware she had outstanding warrants. The interview was neither video nor audio taped and lasted approximately 4 hours. (6/28/04, 18-44)

Officer Staples testified before the Stanley jury only. (6/28/04, 44-116).

Stipulations were agreed upon.

Prosecution rested. (6/28/04, 119)

The court determined defendant Stanley's potential witnesses would not testify before defendant's jury. (6/28/04, 119-139).

A motion for directed verdict was denied. (6/28/04, 139-144).

Mr. McDonald testified before the Stanley jury only. (6/28/04, 149). The court dealt with matters concerning defendant Stanley. (6/28/04, 150-157).

The court again dealt with matters concerning Defendant Stanley's jury. (06/29/04, 3-20).

The court also held defendant Stanley could not testify as to another homicide defendant may have been involved in. (06/29/04, 20-36).

Defendant Stanley testified he was taken to police headquarters and talking to Officer Newman and Officer Staples about what had occurred, which resulted in two signed statements.

On the day in question, he was walking his dog when defendant and Mr. Washington arrived in different cars. Defendant had a weapon on his lap and a shotgun by the passenger seat. He was told to get in the car. Although he did not want to, he was threatened. He took his dog

home and got in defendant Washington's car. Defendant Washington got in defendant's car. They went to a drugstore where defendants Washington and Lango carjacked two people. He was supposed to be the lookout. They drove back to a location where defendant Lango's girlfriend was located.

He was being taken a home by defendant when they went by the bar. Defendant pulled in, quickly cutting them off and pointed a gun at them. Two men began to run as defendant Washington arrived in his own car. Defendant Lango got out of his car. He heard a shot. He denied he ever got out of the car, wore anything on his face, nor did he get any money. He went with defendant because he was scared of defendant Washington, because he had been shot at before, and threatened on this case. After the officers released him he went was mother's house. Although he had been arrested several times, he had always been released. Although he got out of the car after the shooting, defendant Lango looked at him, said something, and he got back in. (06/29/04, 37-55).

On cross examination, he admitted the statements he gave to the police were not completely correct. He went through his statements, indicating which parts were true and which were not. He admitted he was being charged with what had occurred at the drugstore. He saw defendant Lango go through deceased's pockets after defendant Washington shot him. Afterwards, he was threatened not to tell the police. He admitted he lied to the police about several items. He agreed he had worked out deal with Officer Newman, in that he agreed to help him on other matters, and he would not be charged. In the instant case, he was not wearing a mask, and did not get out of the car until the man got shot. He admitted he lied to Dearborn police. (06/29/04, 56-126; 06/30/04, 11-24).

Outside the presence of the jury, he denied writing a letter. (06/29/04, 126-131).

The court dealt with the letter defendant Stanley denied making. (06/30/04, 3-11).

11

Defense rested, as did the codefendants.  (06/30/04, 24).

Officer Newman was recalled.  He denied he had a one-on-one conversation with defendant Stanley, or promised to release him.  After his interview with him, defendant Stanley was turned over to another police agency.  He did not immediately seek a warrant because he was instructed by the prosecutor's office to continue his investigation.  (06/30/04, 25-39).

Jury instructions were reviewed.  (06/30/04, 40-51).  The court denied a request to give the accomplice instruction as it applied to defendant Stanley (CJI2d 5.4 and 5.5), finding the instruction as to witness credibility, CJI2d 3.6, was adequate.

Closing arguments were made by the prosecutor (06/30/04, 58-78, 110-119), defendant Washington (06/30/04, 78-101), and defendant.  (06/30/04, 101-110).

The jury was instructed.  (06/30/04, 120-146).

The jury requested further instructions as to whether or not the aiding and abetting charge applied to the felony firearm charge as well as the assault with intent to murder charge.  They were re-instructed it applied only to the assault charge.  Defendant was found guilty as charged.  (7/01/04).

On July 21, 2004, before Judge Ewell, defendant was sentenced to the mandatory terms of life and two years respectively.  He was sentenced to 15-40 years on the assault with intent to murder conviction.

From these convictions, defendant appeals as of right.

12

## ARGUMENTS

I.  **DEFENDANT-APPELLANT'S CONVICTIONS SHOULD BE REVERSED BECAUSE THE TRIAL COURT ERRED IN FINDING THE STATEMENTS VOLUNTARY AND ERRED IN THEIR ADMISSION AT TRIAL.**

### Standard of Review

A reviewing Court examines the entire record and makes an independent determination of whether a defendant's statement is voluntary.  The trial court's findings will not be reversed unless they are clearly erroneous.  People v. Howard 226 Mich App 528, 543; 575 NW2d 16 (1997).

Although a trial court's findings of fact are entitled to deference, Howard, supra, its application of constitutional standards is not.  People v. Truong (After Remand) 218 Mich App 325, 334; 553 NW2d 692 (1996).

Questions of law are given de novo review.  People v. Daoud 462 Mich 621, 629-630; 614 NW2d 152 (2000).

An appellate Court reviews decisions regarding the admission of evidence for an abuse of discretion.  However, where those decisions involve preliminary questions of law, review is de novo.  People v. Knapp 244 Mich App 361, 377; 624 NW2d 227 (2001); People v. Lukity 460 Mich 484, 488; 596 NW2d 607 (1999).

### Walker Hearing

When reviewing a trial court's determination of voluntariness, this Court must examine the entire record and make an independent determination.  Deference is given to the trial court's assessment of the weight of the evidence and credibility of the witnesses, and the trial court's

findings will not be reversed unless they are clearly erroneous. <u>People v. Howard</u> 226 Mich App

528, 543; 575 NW2d 16 (1997).

As noted, review of lower court decisions involving questions of law are reviewed de

novo. <u>Daoud</u>, supra; <u>Truong</u>, supra.

## Argument

In the instant case, defendant submits the trial court erred in finding the statements made

by defendant to be voluntary.

During the hearing, Defendant testified he was arrested at his mother's house without a

warrant, was handcuffed and taken to the 10th precinct. He acknowledged he signed the rights

form and requested an attorney. He was then led to a cell area where another officer talked to

him and he told that officer he wanted a lawyer present.

He was taken to the 13th precinct, where Officer Newman talked to him again. He

refused that conversation and indicated an officer was pushing on his head. He believed they

were trying to intimidate him and believed they were playing the 'good cop, bad cop' routine.

He again requested a lawyer.

Eventually he started talking, because he was stressed out and believed if he did not, they

were not going to let him go.

In contrast, Off. Newman, who interviewed defendant at a precinct, testified defendant

did not request a lawyer, only that he wanted to talk to his mother. He did agree defendant did

not want to talk to him. (3/26/04, 11-12, 17).

Off. Gutierrez, who interviewed defendant at police headquarters, also advised him of his

rights. The officer testified defendant did not request an attorney. (3/26/04, 31). One statement

was taken at 12:45 pm on 12/23/03; a second at 2:20 pm; a third at 4:45 pm. While there were

no significant breaks, he was advised of his rights only once, used the restroom twice, was provided with minimal nourishment. At no time did he request an attorney. (3/26/04, 44).

Off. Parra assisted in transporting defendant from the precinct to police headquarters, and denied touching defendant.

He had been arrested at approximately 7:00 am the previous day. He had been transported to one precinct, then to headquarters the next day.

Once an accused invokes his Fifth Amendment right to an attorney, the police must discontinue interrogation. It cannot be resumed without counsel present unless the accused initiates further communication with the police. He must be sufficiently aware of his rights to make a voluntary, knowing, and intelligent waiver of those rights. Minnick v. Mississippi 498 US 146, 150; 111 SCt 486; 112 LEd2d 489 (1990); Edwards v. Arizona 451 US 477, 484-485; 101 SCt 1880; 68 LEd2d 378 (1981); People v. Slocum (On Remand) 219 Mich App 695, 697-698; 558 NW2d 4 (1996); People v. McElhaney 215 Mich App 269, 274; 545 NW2d 18 (1996).

Here, defendant had invoked his right to an attorney several times. He did not initiate a conversation with the officers.  One officer agreed defendant did not want to talk and ended the interview. After being transported to headquarters, he was again advised of his rights, and after advising him of his rights, proceeded to interrogate him for at least four hours.

Whether a waiver of Miranda rights was voluntary is analyzed under a totality of the circumstances test, examining the police conduct to determine whether the statements were the product of a free and unconstrained choice. People v. Abraham 234 Mich App 640, 645; 599 NW2d 736 (1999); Howard, supra.

Reviewing the totality of the circumstances, assessing the credibility of the witnesses, with deference given to the trial court, defendant submits the trial court erred in finding the statements or voluntary.

They were the result of extreme pressure on defendant. He was concerned about his mother's house; he had been in custody for at least two days; he had requested an attorney several times, but was ignored; after intense interrogation spanning at many hours, during which time he was minimally fed, he broke down. He gave in and talked to the officers, believing he would be released.

As such, reversal is required.

## MRE 404(b)

Here, in connection with another case, the court determined the evidence of prior bad acts showed a scheme and was not more prejudicial than probative. (MII, 04/04/04, 8-9).

In the instant case, defendant submits the trial court abused its discretion in admission of several statements made by him, which were irrelevant to the issue at hand: whether he had committed the within offenses.

The statements of defendant, implicating him in other offenses, were redacted and read before the jury.

As noted, evidentiary errors are reviewed for an abuse of discretion. Knapp, supra; Lukity, supra,; People v. Crawford 458 Mich. 376, 383; 582 NW2d 785 (1998).

While the rule is one of inclusion, People v. Pesquera 244 Mich App 305, 319; 625 NW2d 407 (2001), here, admission of the bad acts resulted in a miscarriage of justice. Lukity, supra at 495.

In order to admit evidence of prior bad acts, pursuant to MRE 404(b)[3], the court must determine that the evidence is offered for a proper purpose under MRE 404(b), that it be relevant

---

[3] MRE 404(b) states: (1) Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, scheme,

under MRE 402 as enforced through MRE 104(b), that the probative value of the evidence is not substantially outweighed by unfair prejudice, and the trial court may, upon request, provide a limiting instruction to the jury. People v. VanderVliet 444 Mich 52, 55; 508 NW2d 114 (1993), amended 445 Mich 1205 (1994).

Here, the prosecution sought to introduce the evidence of prior bad acts to show a common plan or scheme: that defendant went on a robbing spree.

While defendant recognizes it may have been admitted for a proper purpose, he submits the court failed to determine its relevancy, and erred in finding their probative value was not substantially outweighed by unfair prejudice.

Here, the only similarities between the offenses contained in the statements were that they were robberies. There was no logical relevance between the admitted bad acts and to the charged offenses.

If defendant Stanley's testimony were to be believed, it was a spur of the moment occurrence, while he was being taken back to his house. The situation was completely different from what defendant Stanley had testified to concerning the drugstore robbery/carjacking. He had not been involved in the other homicide/robbery.

The evidence against defendant was not overwhelming. Without the statements of defendant, it consisted of the testimony of one witness, Mr. Bannah and the questionable testimony of defendant Stanley, who claimed involvement in the offenses under duress. Mr. Barmon was unable to identify anyone, and his description of the driver did not match defendant.

---

plan, or system in doing an act, knowledge, identity, or absence of mistake or accident when the same is material, whether such other crimes, wrongs, or acts are contemporaneous with, or prior or subsequent to the conduct at issue in this case.

Thus there was no demonstration of a concurrence of common features between the charged and uncharged acts such that the charged acts were naturally to be explained as being caused by a general plan of which the events were individual manifestations.  See <u>People v. Sabin</u> (After Remand) 463 Mich 43, 63; 614 NW2d 888 (2000).

While the jury was given the cautionary instruction (06/30/04, 134), and jurors are presumed to follow the instructions, <u>People v. Graves</u> 458 Mich 476, 486; 581 NW2d 229 (1998), that did nothing to dispel the substantial prejudicial effect of the bad acts contained in the statements.

If the jury had not been aware of these bad acts, i.e., if the statements had been excluded, the prosecutor would not have been able to reference them in her closing arguments (6/30/04, 67), and it was more probable than not that there would have been a different result.  <u>Lukity</u>, supra.  The jury would have heard defendant's involvement rested upon only one eyewitness, and the questionable testimony of defendant Stanley.

As such, the trial court erred in admission of the statements of defendant containing prior bad acts, in that they were substantially more prejudicial than probative of the issue at hand, whether defendant committed the charged offenses, requiring reversal.

**II.      DEFENDANT-APPELLANT IS ENTITLED TO A NEW TRIAL
         WHERE THE TRIAL COURT GRANTED AN ADJOURNMENT
         FOR OVER ONE WEEK.**

<u>Standard of Review</u>

Requests for adjournment are addressed to the trial court's discretion and the decision will not be overturned absent an abuse of discretion.  <u>People v. Bettistea</u> 173 Mich App 106, 124; 434 NW2d 138 (1988); <u>People v. Williams</u> 386 Mich 565, 571-572; 194 NW2d 337 (1972).

Adjournments or continuances are not to be granted except for good cause shown. <u>People v. Sekoian</u> 169 Mich App 609, 613; 426 NW2d 412 (1988), lv den 431 Mich 869 (1988).

In reviewing this question, this Court must consider whether defendant is asserting a constitutional right, whether there is a legitimate reason for asserting the right, whether defendant is guilty of negligence, whether adjournments were at defendant's behest, and whether prejudice to defendant will result. <u>People v. Wilson</u> 397 Mich 76, 81; 243 NW2d 248 (1976), rch den 397 Mich 962 (1976); <u>People v. Bell</u> 155 Mich App 408, 412-413; 399 NW2d 542 (1986).

On appeal, reversal is mandated only upon a finding of an abuse of discretion which resulted in prejudice to the accused. <u>Wilson</u>, supra; <u>People v. Gross</u> 118 Mich App 161, 164; 324 NW2d 557 (1982); MCL 769.26.

An abuse of discretion is found where an unprejudiced person, considering the facts on which the trial court acted, would say there was no justification or excuse for the ruling made, <u>People v. Snider</u> 239 Mich App 393, 419; 608 NW2d 502 (2000), or the result is so palpably and grossly violative of fact and logic that it evidences a perversity of will, a defiance of judgment, or the exercise of passion or bias. <u>People v. Hine</u> 467 Mich 242, 250; 650 NW2d 659 (2002).

**Argument**

In the instant case, defendant submits the trial court abused its discretion in adjourning the trial for over one week at the request of the prosecutor, where there was no valid reason for the court not to continue the proceedings against defendant.

Apparently, the reason for the adjournment was due to an illness of defendant Stanley. (06/29/04, 128). However, it was unclear at the time of the adjournment whether he would be testifying or what he would be testifying to if he was going to testify.

Application of the standards relative to the continuance demonstrates the court abused it discretion in granting the request.

Defendant was not asserting his constitutional right, nor was it at his behest. The request was made by the prosecution.

The question of whether there was a legitimate reason for the request did not appear to be sound. While the prosecution did not want to call her witnesses twice, there was no reason to go forward with defendant's case, in that he had a separate jury than defendant Stanley. There were witnesses who were ready to testify, besides defendant Stanley. Once trial resumed, the prosecution called police officers Jackson and Staples to testify.

There was no negligence on defendant's part. On the contrary, he objected to the continuance, noting the prejudicial effect the continuance would have on his jury: defendant was ready to proceed with the trial, which had been entering its third week. Numerous witnesses had already testified and it was more probable than not that with the adjournment, that testimony would be significantly minimized, in that the court prohibited the jury from note-taking. The jury would focus more upon the testimony of the witnesses presented after trial had resumed, including defendant Stanley, as opposed to considering the testimony of all the witnesses in making its decision as to defendant's guilt.

20

It was clear that this adjournment was not for good cause, nor granted with a view towards speedy and substantial justice. See MCR 2.503; MCL 768.2.  On the contrary, even the court was confused as to why it was required to grant the adjournment, requesting from the prosecutor information as to why he the court had no choice but to grant the adjournment. (06/17/04, 7).

Defendant therefore submits the court abused its discretion in granting the extensive adjournment.

III.      **DEFENDANT-APPELLANT'S CONVICTIONS SHOULD BE REVERSED BECAUSE THE JURY WAS NOT PROPERLY INSTRUCTED AS HOW TO CONSIDER THE TESTIMONY OF ANOTHER DEFENDANT.**

**Standard of Review**

Where there are questions involving the jury instructions, review is de novo.  People v. Perez 469 Mich 415, 418; 670 NW2d 655 (2003); People v. Marion 250 Mich App 446, 448; 647 NW2d 521 (2002).

A trial court is required to give requested instructions only if the instructions are supported by the evidence or the facts of the case.  People v. Ho 231 Mich App 178, 189; 585 NW2d 357 (1998).

If an applicable instruction was not given, the defendant must show that the court's failure to give the requested instruction resulted in a miscarriage of justice. People v. Riddle 467 Mich 116, 124; 649 NW2d 30 (2002).

The instructions are to be read as a whole rather than extracted piecemeal to establish error, and even if somewhat imperfect, there is no error if the instructions fairly presented the issues to be tried and sufficiently protected the defendant's rights.  They must include all elements of the crime charged and must not exclude consideration of material issues, defenses and theories for which there is evidence in support.  People v. Rodriguez 463 Mich 466, 472-474; 620 NW2d 13 (2000); People v. Daniel 207 Mich App 47, 53; 523 NW2d 830 (1994).

Where a requested instruction is not given, the defendant bears the burden of establishing that this constituted a miscarriage of justice. MCL 769.26; Riddle, supra; Rodriguez, supra; Lukity, supra.   .

**Argument**

Here, defendant submits the trial court erred in denying the defense request to instruct his jury as to how to consider the testimony of defendant Stanley.

This issue was preserved for review, as defense had requested the jury instruction, as it related to an accomplice.

The court denied the request, noting the instruction on witness credibility, CJI2d 3.6, was adequate, because of defendant Stanley's position. (6/30/04, 44-45).

Defendant's jury had heard testimony from defendant Stanley, who claimed he was involved not only in the charged offense, but at least one other armed robbery involving defendant. He advanced the theory he was involved not by choice, but his involvement was under duress. Thus he admitted his involvement, albeit for a different reason.

Defendant submits the jury should have been instructed at the very least, to consider his testimony as a disputed accomplice, CJI2d 5.5, Witness a Disputed Accomplice and been cautioned in accordance with CJI2d 5.6 Cautionary Instruction Regarding Accomplice Testimony.

As applied to this case, the instructions would have read as follows:

> (1) Before you may consider what Mr. Stanley said in court, you must decide whether he took part in the crime the defendant is charged with committing. Mr. Stanley has not admitted taking part in the crime, but there is evidence that could lead you to think that he did.
> (2) A person who knowingly and willingly helps or cooperates with someone else in committing a crime is called an accomplice.
> (3) When you think about Mr. Stanley's testimony, first decide if he was an accomplice. If, after thinking about all the evidence, you decide that he did not take part in this crime, judge his testimony as you judge that of any other witness. But, if you decide that Mr. Stanley was an accomplice, then you must consider his testimony in the following way: (CJI2d 5.5)

> (1) You should examine an accomplice's testimony closely and be very careful about accepting it.